B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor      ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |
| Other Relief Sought | |

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet.   unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 104 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **XINERGY LTD.**, *et al.*, | **Case No. 15-70444 (PMB)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| **XINERGY LTD.**, *et al.*, | |
| **Plaintiffs,** | **Adv. Pro. No. __-_____ (PMB)** |
| **vs.** | **Complaint for Injunctive and Declaratory Relief** |
| **JON NIX.** | |
| **Defendant.** | |

**COMPLAINT OF DEBTORS AND DEBTORS IN POSSESSION FOR
DECLARATORY AND INJUNCTIVE RELIEF UNDER SECTIONS 105
AND 362 OF THE BANKRUPTCY CODE**

Xinergy Ltd. and its affiliated debtors (collectively, the "Debtors" or "Plaintiffs"), by and

through their undersigned counsel, file this complaint (the "Complaint") seeking an injunction

and declaratory relief against Jon Nix (the "Defendant"), and respectfully allege:

---

[1]    The Debtors, along with the last four digits of each Debtor's federal tax identification number, are listed on
Schedule 1 attached hereto.

HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)

*Counsel to the Debtors
and Debtors in Possession*

## SUMMARY OF THE ACTION

The Debtors seek a declaration that Xinergy Ltd. has no obligation to hold a special shareholder meeting prior to confirmation of a plan or further order of the Court.  This Court should declare that the automatic stay applies, or should be extended under section 105 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code") to apply, to stay any attempt by the Defendant to call and/or hold a special shareholder meeting of Xinergy Ltd. in order to change the composition of the board of directors of Xinergy Ltd (the "Board of Directors").  The Debtors seek an injunction, pursuant to section 105, prohibiting the Defendant from taking further actions to call or hold a special shareholder meeting.

The Board of Directors is duly constituted and acting in accordance with its fiduciary duties to guide the Debtors in their attempts to maximize value for the benefit of all stakeholders of the Debtors' estate.  To fulfill its fiduciary duties, the Board of Directors is pursuing a bankruptcy reorganization strategy for the Debtors that will attempt to preserve the business as a going concern and reach an agreed restructuring plan with the major constituencies involved. The dynamics of the Debtors' business make it absolutely essential that the reorganization process move swiftly to minimize costs and business risk, and thereby provide the best chance to maximize the recoveries for all interested parties.  Interference that delays the restructuring efforts will impose an unacceptable risk to the estates' stakeholders through increased restructuring costs, operational disruptions and uncertainty around its post-petition financing, thereby jeopardizing the Debtors' ability to reorganize as a going concern and exit bankruptcy.

The Defendant's self-serving agenda—manifested through a campaign of misinformation, interference and threats designed to reshape the Board of Directors to his personal preferences—presents exactly the type of risk that the Debtors' estates cannot

withstand.  The Defendant has launched libelous accusations regarding the Board of Directors's alleged actions or inaction in the months leading up to the Debtors' bankruptcy filings and misrepresented the facts in pleadings filed with this Court and in oral argument at the hearing held on May 5, 2015.   Upon information and belief, the Defendant has inappropriately sought and gained access to material non-public information of the Debtors, and misrepresented to the marketplace that he is acting for the Debtors when he has not held office since resigning in 2012 amidst allegations of mismanagement and unethical conduct.   The Defendant seeks to inject conflicts of interests into the Debtors' corporate decision making by proposing to replace directors with a representative of a competitor and with a terminated employee of the Debtors. At the same time, upon information and belief, the Defendant is pursuing transactions with one or more of the Debtors' critical customers that may harm the Debtors' business.  Each of these actions by the Defendant has disrupted, or is intended to disrupt, the Debtors' restructuring efforts.   In sum, it is apparent that the Defendant's actions are misguided, contrary to the interests of the Debtors' estates, and not aimed simply at leveraging equity's bargaining position in these cases.

The Defendant has threatened to seek judicial relief in Canada if he does not get his way and cause further interruption by replacing the Debtors' professionals and management if and when he gains control of the Board of Directors.   Those actions seek to derail or delay the Debtors' legal efforts to reorganize in a timely manner through the U.S. bankruptcy system.  The Defendant's actions and threats not only will drive up the costs of the restructuring, but have interfered with and will significantly jeopardize the business operations and legitimate efforts of the Debtors to de-lever their balance sheet from the significant debt incurred while the Defendant

managed the company.   Absent protection from the Defendant's interference, the Debtors' estates will suffer irreparable injury for which there is no adequate remedy at law.

## JURISDICTION AND VENUE

1.        On April 6, 2015 (the "Petition Date"), each of the Debtors filed with the Court their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "Bankruptcy Cases").

2.        The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.        No official committee of unsecured creditors has been appointed in the Bankruptcy Cases.

4.        The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

5.        This matter is a core proceeding pursuant to 28 U.S.C. §157 (b)(2)(A), (G) and (O).

6.        The predicates for the relief requested herein are sections 362(a) and 105(a) of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.        The Debtors consent to entry of final orders and judgments by the Court in this adversary proceeding.

8.        Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL AND FACTUAL BACKGROUND

**A.      The Parties**

9.      Plaintiffs Xinergy Ltd. and its subsidiaries listed on Schedule 1 attached hereto are debtors and debtors in possession in the jointly administered Bankruptcy Cases.

10.      A full description of the Debtors' business operations, corporate structures, capital structures, and reasons for commencing these cases, along with a corporate organizational chart, is set forth in full in the Declaration of Michael R. Castle in Support of Chapter 11 Petitions and Related Motions (the "Castle Declaration") [Doc. No. 18], which is attached hereto as Exhibit A.

11.      The Defendant, an individual, is a resident of the state of Tennessee.

12.      The Defendant founded Xinergy Corp. in March 2008 and served as the Chairman and Chief Executive Officer of Xinergy Ltd. from March 2008 until May 14, 2012.

13.      Upon information and belief, the Defendant owns approximately eighteen percent (18%) of Xinergy Ltd.'s outstanding voting common shares.

14.      On May 10, 2012, during the Defendant's tenure as Chairman and Chief Executive Officer of Xinergy Ltd., the Board of Directors of Xinergy Ltd. received a letter (the "FrontFour Letter"), attached hereto as Exhibit B, from a significant long-term shareholder, which also then held over $15 million of the Debtors' second-lien debt, alleging that "Xinergy has lost credibility with a significant portion of its investor base.  It is our strong belief that [the Defendant] is the root cause of the mistrust … causing the Company to be viewed negatively and [the Defendant] to be characterized as an overzealous stock promoter….  We are also deeply troubled by the events at the board level that can only be described as a total disregard for corporate governance."

15.     On May 14, 2012, four days after receipt of the FrontFour Letter by the Board of Directors, the Defendant resigned his position as Chairman and Chief Executive Officer.

16.     Despite his resignation, the Defendant continues to this day to represent to the marketplace that he has authority to act for the Debtors, causing confusion or the potential for confusion concerning the direction of the companies, their intentions in the reorganization process, and with vendors and customers alike. The Defendant has attempted to negotiate with the Debtors' lenders and prospective lenders when he has no such authority to act for the Debtors.  In addition, the Defendant somehow continues to acquire information concerning the Debtors' business operations, loan proposals and strategy that is not public information, thus giving him an unfair advantage, but also creating great risk to the Debtors' reorganization efforts.

**B.     The Board of Directors**

17.     The Board of Directors is duly constituted, and the Defendant has not alleged any deficiency in the appointment of any of its current members.

18.     The Board of Directors has the fiduciary duty to advocate for all of the Debtors' stakeholders, not solely equity holders.

19.     In satisfaction of its fiduciary duties, the Board of Directors is currently attempting to pursue a restructuring that de-levers the Debtors' balance sheet and allows the enterprise to continue as a going concern for the benefit of all of the Debtors' stakeholders.

20.     In the *Limited Objection* [Doc. No. 124] filed by the Defendant to opposed final approval of the Debtors' DIP Facility, the Defendant libelously accused the Board of Directors of making business decisions that caused the deterioration in the Debtors' financial condition, which false accusations were reported in the press.

21.    In open court at the hearing on May 5, 2015, the Defendant again asserted falsely that the Board of Directors failed to take action leading up to the bankruptcy filing to preserve the Debtors' liquidity.

**B.    The Debtors' Postpetition Financing**

22.    Knowing that they faced serious prepetition liquidity constraints, the Debtors sought a DIP Facility that would provide adequate liquidity for the Debtors to finance the costs of these Bankruptcy Cases and to provide the Debtors with sufficient operating liquidity to complete a quick restructuring and avoid the substantial costs associated with a prolonged restructuring process that likely would give rise to further liquidity issues.

23.    On April 8, 2015, Xinergy Corp., and certain of the Debtors as guarantors, entered into that certain Superpriority Secured Debtor-In-Possession Credit Agreement (the "DIP Credit Agreement," a copy of which is attached hereto as Exhibit C and together with all agreements, documents, guarantees, certificates and instruments delivered or executed from time to time in connection therewith, as may be subsequently amended, restated, amended and restated, supplemented, or otherwise modified from time to time, collectively, the "DIP Documents") with affiliates of Whitebox Advisors LLC and Highbridge Capital Management, LLC, other lenders party thereto from time to time (collectively, the "DIP Lenders") and WBOX 2014-4 Ltd. (the "DIP Agent").

24.    On May 5, 2015, this Court entered its *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364€ and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§*

*361, 362, 363 and 364* [Doc. No. 43] (the "Final DIP Order").  A copy of the Final DIP Order is

attached hereto as Exhibit D.

25.     The Final DIP Order authorized and approved on a final basis, *inter alia*, the

Debtors' entry into a postpetition credit facility up to an aggregate principal amount of

$40,000,000 (the "DIP Facility") provided by the DIP Lenders, as further described in the DIP

Documents, the Debtors' execution and delivery of the DIP Documents, the Debtors' immediate

use of the proceeds of the DIP Facility as set forth in the Final DIP Order, and the DIP Agent's

termination of the applicable DIP Documents upon the occurrence and continuance of an Event

of Default (as defined in the Final DIP Order).

26.     The DIP Credit Agreement provides that as a condition to providing the DIP

Facility the DIP Lenders require the Debtors to meet certain milestones, *to wit*:

- by no later than seventy-five (75) days following the Petition Date, the Debtors shall file with the Bankruptcy Court in the Cases a proposed Acceptable Reorganization Plan[2] and a motion seeking approval of a disclosure statement for such Acceptable Reorganization Plan and solicitation procedures contemplating completion of a confirmation hearing which disclosure statement and solicitation procedures must otherwise be in form and substance reasonably acceptable to the DIP Agent and Majority Lenders;

- by no later than one hundred and twenty (120) days following the Petition Date, the Bankruptcy Court shall have entered an order approving a disclosure statement for an Acceptable Reorganization Plan and solicitation procedures contemplating completion of a confirmation hearing, which disclosure statement and solicitation procedures must otherwise be in form and substance reasonably acceptable to the DIP Agent and Majority Lenders, and the Bankruptcy Court's approval of such disclosure statement and solicitation procedures shall not have been amended, modified or supplemented (or any portions thereof reversed, stayed or vacated) other than as agreed in writing by Majority Lenders;

- by no later than one hundred and eighty (180) days following the Petition Date, the Bankruptcy Court shall have entered an order confirming an Acceptable Reorganization Plan, which order shall be in form and substance acceptable to DIP Agent and Majority Lenders in their sole discretion and shall not have been

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the DIP Credit Agreement.  A complete list of milestones is set forth in Section 6.25 of the DIP Credit Agreement.

amended, modified or supplemented (or any portions thereof reversed, stayed or vacated) other than as agreed in writing by DIP Agent and Majority Lenders; and

- by no later than two hundred and ten (210) days following the Petition Date, the effective date of an Acceptable Reorganization Plan shall have occurred, and the order confirming the Acceptable Reorganization Plan.

Section 9.1(t) of the DIP Credit Agreement provides that if the Debtors fail to meet any of the milestones, it is an Event of Default.

27.    Absent unanticipated improvements in the coal market, the Debtors do not believe that the current DIP Facility would provide sufficient liquidity to maintain operations for a lengthy period of time after the expiration of the milestones.

28.    Section 9.1(f) of the DIP Credit Agreement provides that a Change in Control is an Event of Default.  The DIP Credit Agreement defines a "Change in Control" as, *inter alia*:

as of any date a majority of the Board of Directors of Parent consists (other than vacant seats) of individuals who were not either (i) directors of Parent as of the Agreement Date, (ii) selected or nominated to become directors by the Board of Directors of Parent of which a majority consisted of individuals described in clause (i), or (iii) selected or nominated to become directors by the Board of Directors of Parent of which a majority consisted of individuals described in clause (i) and individuals described in clause (ii).

29.    The Change in Control provision is consistent with the change of control provision included in the Indenture governing the Second Lien Notes, a provision that was negotiated while the Defendant was Chairman and Chief Executive Officer of Xinergy Ltd.

30.    Section 9.1(n) of the DIP Credit Agreement provides that it is an Event of Default if either Gregory L. "Bernie" Mason, the Chief Executive Officer of Xinergy Ltd., or Michael R. Castle, the Chief Financial Officer, cease to hold their current positions.

31.    None of the foregoing provisions of the DIP Credit Agreement were agreed to by the Debtors for the purpose of denying the Defendant the right to exercise shareholder rights.

**C.     The Shareholder Requisition Notice**

32.     On or about April 16, 2015, the Debtors received a letter from counsel to the Defendant that enclosed a requisition (the "Requisition").  A copy of the Requisition is attached hereto as Exhibit E.

33.     The Requisition demands that the Board of Directors call a meeting of shareholders for the purpose of reconstituting the Board of Directors.

34.     The Requisition specifically seeks to remove and/or replace three of the five current board members.

35.     Counsel to the Defendant indicated to special counsel to the Debtors that the Defendant has not decided whether to attempt to replace additional board members.

36.     The Requisition proposes to elect two new members, Mr. Jeffrey A. Wilson and Ms. Debra Powers, to the Board of Directors.

37.     Upon information and belief, Mr. Wilson currently serves as the top executive of a competitor of the Debtors.

38.     As such, in the unlikely event Mr. Wilson would even agree to serve, he would have numerous conflicts of interest in attempting to discharge his duties as a member of the Board of Directors, which would cast a shadow of doubt over corporate decisions made by a reconstituted Board of Directors.

39.     Ms. Powers served the Debtors previously as acting interim Chief Financial Officer beginning in January 2009, and then as Vice-President of Finance, and Corporate Treasurer and Controller until her employment was terminated by the Debtors in February 2012.

40.     If Ms. Powers is appointed to the Board of Directors, the Debtors' current Controller has indicated to the Debtors' Chief Financial Officer that she would resign, which would cause significant disruption to the Debtors' business.

41.      The Debtors believe other personnel also may leave the employ of the Debtors if Ms. Powers is appointed, or if the Defendant otherwise controls the Board of Directors, further damaging the Debtors' business.

42.      The Requisition demands that the Board of Directors call the special meeting or hold a combined meeting with its regular annual meeting by June 30, 2015.

43.      The Requisition further states that in the event the Board of Directors determines it would not be advisable to hold a special meeting prior to the June 30 deadline, the Defendant intends to exercise all of his rights under applicable Canadian corporate law to ensure that a special meeting is held in a timely manner, including, without limitation, by making an application to the Ontario Superior Court of Justice (the "Superior Court") for an order that the special meeting be held.

44.      Upon information and belief, Canadian laws require a minimum notice period for establishing a record date and providing notice of a shareholder meeting.

45.      Separately, counsel to the Defendant indicated to counsel to the Debtors on a telephone call on or about April 27, 2015 that, following the shareholder meeting requested in the Requisition, the Defendant intends to replace the professionals retained by the Debtors in the Bankruptcy Cases.

46.      On May 7, 2015, the Debtors responded to the Requisition through a letter (the "Response Letter") from their counsel to the Defendant's Canadian counsel, indicating that the Board of Directors had reviewed and considered the Requisition, but declined to call a special shareholder meeting of Xinergy Ltd. because, among other reasons, it would seriously jeopardize the Debtors' prospects for successfully reorganizing through these Bankruptcy Cases to the

detriment of all of the estates' stakeholders.  A copy of the Response Letter is attached hereto as

Exhibit F.

**D.    The Canadian Recognition Proceedings**

47.    Following the Petition Date, the Debtors filed an application with the Superior

Court under the Companies' Creditors Arrangement Act (CCAA) (the "CCAA Application")

seeking recognition of the Interim DIP Order and certain other orders entered by this Court.

48.    The Superior Court held a hearing on the CCAA Application on April 23, 2015.

49.    The Superior Court entered an Initial Recognition Order (Foreign Main

Proceeding), dated April 23, 2015 (the "Initial Recognition Order"), recognizing these

Bankruptcy Cases as a "foreign main proceeding" as defined in section 45 of the CCAA.  A copy

of the Initial Recognition Order is attached hereto as Exhibit G.

50.    The Superior Court entered a Supplemental Order (Foreign Main Proceeding),

dated as of April 23, 2015 (the "Supplemental Recognition Order"), recognizing the Interim DIP

Order and certain other orders entered in these Bankruptcy Cases.  A copy of the Supplemental

Recognition Order is attached hereto as Exhibit H.

51.    The Superior Court entered its Reasons for Judgment on April 24, 2015 (the

"Reasons for Judgment"), providing its reasons for signing the Initial Recognition Order and the

Supplemental Recognition Order.  A copy of the Reasons for Judgment is attached hereto as

Exhibit I.

52.    The Defendant appeared by counsel at the CCAA recognition hearing before the

Superior Court and advised the Judge that the Defendant may be raising issues with respect to

governance and a shareholders meeting under the corporate statute.

53.    Neither the Initial Recognition Order, the Supplemental Recognition Order, nor

the Reasons for Judgment grant any relief to the Defendant or make any reference to the dispute.

54.     The next hearing in the CCAA recognition proceeding is scheduled for May 21, 2015, when the Debtors will seek an order from the Superior Court recognizing the Final DIP Order, among other orders entered by this Court following the hearing on May 5, 2015.

55.     The Defendant has reserved time at the upcoming May 21 hearing in the CCAA proceeding, but as of the date of this Complaint, the Debtors have not received service of any motion from the Defendant and no evidence has been put before the Superior Court by the Defendant.

56.     Upon information and belief, if the Defendant were successful in obtaining an order from the Superior Court at the May 21 hearing permitting the Defendant to hold a special shareholder meeting, the meeting could not be held until at least late June or early July—likely after the Debtors file a chapter 11 plan—in order to comply with the notice requirements imposed by Canadian law.

**E.     The Debtors' Equity Interests and Debt**

57.     Just prior to the commencement of the Bankruptcy Cases, Xinergy Ltd.'s share price was quoted at C$0.02.[3]

58.     The Toronto Stock Exchange listed outstanding common shares of 58,304,482. The total market cap of Xinergy Ltd. as of the Petition Date was approximately C$1.17 million (approximately $971,100 in U.S. Dollars at current exchange rates).

59.     Currently, there is approximately $195 million outstanding under the Second Lien Notes, which debt was incurred while the Defendant served as Chairman and Chief Executive Officer of Xinergy Ltd.

60.     There is approximately $40 million currently outstanding on the DIP Facility.

---

[3] A stock quotation can be viewed at http://web.tmxmoney.com/quote.php?locale=en&qm_symbol=XRG.

F.      **The Debtors' Reorganization Efforts**

61.     The Debtors' primary objective in the Bankruptcy Cases is to maximize the value of their estates for the benefit of the Debtors' creditors and other stakeholders, including preserving the Debtors' business as a going concern through a short, efficient restructuring process.

62.     Due to the fragility of the Debtors' business while in bankruptcy, these cases must proceed on a fast track.  The Debtors faced a liquidity crisis prior to the bankruptcy filings due to a rapid deterioration in the price commanded for coal of the types produced by the Debtors.  The Debtors were able to secure postpetition financing that will allow them to restructure the companies provided they can proceed in a timely manner.  Any delay in the reorganization process will cause the incurrence of significant additional costs, expose the Debtors to greater market risk, and could lead to another liquidity crisis.  The Debtors believe they currently are situated to complete a successful restructuring in the time projected, but any delays expose these estates to great risk.

63.     The Debtors must file a chapter 11 plan acceptable to the DIP Agent and majority of the DIP Lenders in less than forty-five (45) days in order to comply with the milestones set forth in the DIP Credit Agreement.

64.     To comply with the milestones in the DIP Credit Agreement, the plan must be confirmed less than three months later and the plan must become effective by October 2015.

65.     Under the direction of the current Board of Directors, the Debtors have made significant progress in these Bankruptcy Cases, including, without limitation, (i) successfully obtaining approval of the DIP Facility on a final basis, (ii) negotiating and obtaining consent from the majority of the Debtors' critical vendors to payment plans and the continued provision

of goods and services to the Debtors on ordinary terms, (iii) successfully negotiating with utility providers over deposits and the continued provision of utility services, and (iv) obtaining approval on a final basis of motions allowing the Debtors to continue critical aspects of their business, including the payment of employee wages and taxes, maintenance of insurance and surety programs, continuation of their cash management system and the employment of professionals.

66.    With the assistance of the Debtors' professionals, the Debtors are in the midst of preparing a restructuring proposal to submit to the bondholders and DIP Lenders for their consideration.  Negotiation of the restructuring proposal will have occurred long before any special shareholder meeting could be held.  The Debtors also anticipate filing the plan before shareholder meeting could be held.

67.    Upon information and belief, in an effort to disrupt the Debtors' restructuring efforts, since the Petition Date, the Defendant has inappropriately obtained material, non-public information of the Debtors.  The Defendant has had conversations with the Debtors' lenders and prospective lenders and attempted to negotiate terms of loans to the Debtors and terms of a restructuring plan, even though the Defendant has no authority from the Debtors to do so.

68.    Upon information and belief, in further effort to disrupt the Debtors' restructuring efforts, since the Petition Date, the Defendant has contacted one or more of the Debtors' most important customers in an attempt to raise financing for a transaction for himself, which risks harm to the Debtors' business interests.

## CLAIMS FOR RELIEF

## COUNT I
**(Declaratory Relief – Bankruptcy Code Section 362)**

69.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 68 above as if fully set forth herein.

70.     This is a claim for declaratory relief and there exists a substantial controversy between the Debtors and the Defendant of sufficient immediacy and reality to warrant the issuance of declaratory judgment under 28 U.S.C. § 2201.

71.     The Debtors seek a declaration that the Requisition and any further attempt by the Defendant to call and/or hold a special shareholder meeting of Xinergy Ltd. is subject to the automatic stay of section 362(a)(1) and/or (a)(3) of the Bankruptcy Code.

72.     Section 362(a)(1) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

73.     Section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

74.     Pursuant to the automatic stay imposed by the Bankruptcy Code, the Defendant was and is prohibited from taking any actions that improperly interfere with the property of the Debtors' estates.

75.     Any motion or other judicial proceeding filed in Canada against the Debtors, including the anticipated motion to be filed by the Defendant in advance of the May 21, 2015 hearing before the Superior Court, is subject to section 362(a)(1) of the Bankruptcy Code.

76.     Xinergy Ltd. is the parent company of each of the other Debtors.

77.     Xinergy Ltd., through itself or one of its wholly owned subsidiaries, is the 100% owner of each of the other Debtors.

78.     Xinergy Ltd. does not have any operating assets.

79.     The Defendant is a shareholder of Xinergy Ltd., but does not have any ownership interest in any of the other Debtors.

80.     The Requisition and the calling of a special shareholder meeting is an attempt by the Defendant to reconstitute the Board of Directors in order to direct and control the Debtors' operating assets owned by the Debtor subsidiaries of Xinergy Ltd.

81.     If successful in reconstituting the Board of Directors, the Defendant intends to cause Xinergy Ltd. to exercise its rights to replace directors, members and/or managers of the Debtor subsidiaries of Xinergy Ltd. and to replace key members of the Debtors' management team and its professional advisors.

82.     These actions by the Defendant are attempts to exercise control over property of the Debtors' estates.

83.     Accordingly, the Debtors are entitled to a declaration that the automatic stay of section 362(a) of the Bankruptcy applies to any attempt by the Defendant to call a special shareholder meeting of Xinergy Ltd., including through any motion or other judicial proceeding filed in the Superior Court.

## COUNT II
### (Declaratory Relief – Bankruptcy Code Sections 105(a) and 362(a))

84.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 68 above as if fully set forth herein.

85.     This is a claim for declaratory relief and there exists a substantial controversy between the Debtors and the Defendant of sufficient immediacy and reality to warrant the issuance of declaratory judgment under 28 U.S.C. § 2201.

86.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

87.     Section 362(a) operates as a stay that protects the Debtors and property of the estate.

88.     Relief under sections 105(a) and 362(a) is particularly appropriate in this case where the Debtors require relief that is necessary in order to preserve the Debtors' reorganization prospects.

89.     The actions that the Defendant proposes in the Requisition will cause real and significant harm to the Debtors' estate because they interfere with and pose a substantial risk to the Debtors' ability to pursue a successful restructuring.

90.     A calling of a special shareholder meeting of Xinergy Ltd. as set out in the Requisition and the follow-through by the Defendant in his stated intentions may, among other things, (i) disrupt the Debtors' operations so as to cause a deterioration in the financial performance of the Debtors, (ii) require the Debtors to incur unnecessary costs, (iii) trigger a "Change in Control," (iv) cause the resignation or replacement of certain members of the Debtors' senior management, (v) distract the Debtors and their professionals from successfully

pursuing a restructuring plan in a timely manner, (vi) cause the Debtors to miss the milestones contained in the DIP Credit Agreement, (vii) cause uncertainty with the Debtors' vendors and creditors over the direction of the business and reorganization efforts, and (viii) otherwise diminish the value of the Debtors to the detriment of all constituencies of the estates.

91.     Each of the circumstances listed in the preceding paragraph also could give rise to or constitute an Event of Default under the DIP Credit Agreement.

92.     The occurrence of an Event of Default could cause the termination of the DIP Facility, which would seriously jeopardize the Debtors' ability to continue as a going concern and reorganize through the chapter 11 cases.

93.     Appointment of the Defendants' proposed nominees, Mr. Wilson and Ms. Powers, to the Board of Directors would impair the Board of Directors' ability to conduct responsible corporate governance and the ability of the Debtors' management to continue operations uninterrupted due to the introduction of potential conflicts of interest and distrust, and the potential resignation of one or more key members of the Debtors' management, thereby causing substantial harm to the value of the Debtors' estates.

94.     The costs of calling and noticing a special shareholder meeting of Xinergy Ltd., including without limitation, associated attorneys' fees and costs of U.S. and Canadian counsel will be significant, thereby depleting the estates' property.

95.     The Debtors also lack authority under the DIP Credit Agreement to incur the costs associated with calling a special shareholder meeting.

96.     It would be a significant burden on senior management to prepare for and participate in a special shareholder meeting of Xinergy Ltd. while the Debtors are in the midst of

addressing critical issues imperative to a successful restructuring and continued operation of the business as a going concern.

97.     Even if the Defendant were able to call a special shareholder meeting of Xinergy Ltd., the advance notice required to call the meeting would mean that a reconstituted board of directors would have insufficient time to propose an amended or new restructuring plan and still satisfy the milestones set forth in the DIP Credit Agreement.

98.     Previous actions by the Defendant have indicated that he is motivated to serve his own personal interests without regard to the interests of other stakeholders, which would present serious risks to the success of the Debtors' restructuring efforts if the Debtors are required to comply with the Requisition.

99.     Accordingly, the Debtors are entitled to a declaration that the Debtors shall not be required to hold a special meeting of shareholders of Xinergy Ltd. to consider a change to the members of the Board of Directors until a reorganization plan becomes effective or upon further order of this Court.

### COUNT III
**(Injunctive Relief – Bankruptcy Code Sections 105(a) and 362(a))**

100.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 68 above as if fully set forth herein.

101.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

102.     Section 362(a) operates as a stay that protects the Debtors and property of the estate.

103.    Relief under sections 105(a) and 362(a) is particularly appropriate in this case where the Debtors require relief that is necessary in order to preserve the Debtors' reorganization prospects.

104.    Absent an order enjoining the Requisition, the Debtors will suffer irreparable harm due to any attempt to call a special meeting of shareholders to change the members of the Board of Directors,

105.    A calling of a special shareholder meeting of Xinergy Ltd. as set out in the Requisition and the follow-through by the Defendant in his stated intentions may, among other things, (i) disrupt the Debtors' operations so as to cause a deterioration in the financial performance of the Debtors, (ii) require the Debtors to incur unnecessary costs, (iii) trigger a "Change in Control," (iv) cause the resignation or replacement of certain members of the Debtors' senior management, (v) distract the Debtors and their professionals from successfully pursuing a restructuring plan in a timely manner, (vi) cause the Debtors to miss the milestones contained in the DIP Credit Agreement, (vii) cause uncertainty with the Debtors' vendors and creditors over the direction of the business and reorganization efforts, and (viii) otherwise diminish the value of the Debtors to the detriment of all constituencies of the estates.

106.    Each of the circumstances listed in the preceding paragraph also could give rise to or constitute an Event of Default under the DIP Credit Agreement.

107.    The occurrence of an Event of Default could cause the termination of the DIP Facility, which would seriously jeopardize the Debtors' ability to continue as a going concern and reorganize through the chapter 11 cases.

108.    Appointment of the Defendants' proposed nominees, Mr. Wilson and Ms. Powers, to the Board of Directors would impair the Board of Directors' ability to conduct responsible

corporate governance and the ability of the Debtors' management to continue operations uninterrupted due to the introduction of potential conflicts of interest and distrust, and the potential resignation of one or more key members of the Debtors' management, thereby causing substantial harm to the value of the Debtors' estates.

109.    The costs of calling and noticing a special shareholder meeting of Xinergy Ltd., including without limitation, associated attorneys' fees and costs of U.S. and Canadian counsel will be significant, thereby depleting the estates' property.

110.    It would be a significant burden on senior management to prepare for and participate in a special shareholder meeting while the Debtors are in the midst of addressing critical issues imperative to a successful restructuring and continued operation of the business as a going concern.

111.    Even if the Defendant were able to call a special shareholder meeting of Xinergy Ltd., the advance notice required to call the meeting would mean that a reconstituted board of directors would have insufficient time to propose an amended or new restructuring plan and still satisfy the milestones set forth in the DIP Credit Agreement.

112.    Previous actions by the Defendant have indicated that he is motivated to serve his own personal interests without regard to the interests of other stakeholders, which would present serious risks to the success of the Debtors' restructuring efforts if the Debtors are required to comply with the Requisition.

113.    The likelihood of the irreparable harm to the Debtors' estates outweighs any harm to the Defendant, who will only be enjoined temporarily from exercising these limited shareholder rights and will still be able to participate in the restructuring process, including appearing and being heard at any hearings.

114.   Granting the requested injunction is in the public's best interest because it will preserve the resources and interests of the Debtors, give effect to the automatic stay, and facilitate the Debtors' successful reorganization.

115.   Allowing the Defendant to call a special shareholder meeting of Xinergy Ltd. to change the members of the Board of Directors, on the other hand, will risk causing significant harm to the value of the Debtors' estate at the expense of all stakeholders in the Bankruptcy Cases.

116.   The Debtors lack an adequate remedy at law.

117.   Accordingly, good cause exists for entry of injunctive relief under sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065 against the Defendant enjoining the Requisition and the calling of a special shareholder meeting until confirmation of the Debtors' restructuring plan or further order of this Court.

WHEREFORE, the Debtors respectfully request relief as follows:

1)   For a determination and judgment on Count I of this Complaint declaring that the automatic stay of section 362(a) of the Bankruptcy Code is applicable to stay the Requisition and any attempt to call a special shareholder meeting of Xinergy Ltd. to change the member of the Board of Directors or for any other matters, including through the filing of a motion or other judicial proceeding with the Superior Court;

2)   For a determination and judgment on Count II of this Complaint pursuant to sections 105(a) and 362(a) declaring (i) that the Debtors shall not be required to hold a special shareholder meeting of Xinergy Ltd. until a reorganization plan is confirmed or upon further order of the Court, (ii) that if called by the Defendant, the meeting does not have to be held, and (iii) that if held notwithstanding the foregoing, such meeting would have no effect;

3)   For a determination and judgment on Count III of this Complaint that the Debtors are entitled to temporary and/or preliminary and permanent injunctive relief under sections 105(a) and 362(a) of the Bankruptcy Code and Bankruptcy Rule 7065 enjoining the Requisition and the Defendant from taking any further action to call or hold a special shareholder meeting

of Xinergy Ltd. until a reorganization plan is confirmed or upon further order of the Court;

4)       For costs of suit incurred herein; and

5)       That such order and further relief be awarded as this Court deems just and appropriate

DATED: May 8, 2015

Respectfully submitted,

 /s/ *Tyler P. Brown*

Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No.77979)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone:  (804) 788-8200
Facsimile:    (804) 788-8218
Email: tpbrown@hunton.com
      hlong@hunton.com
      jpaget@hunton.com
*Counsel to the Debtors*
*and Debtors in Possession*

# SCHEDULE 1

## Debtor Entities

| | | | |
|---|---|---|---|
| 1. | Xinergy Ltd. (3697) | 14. | Whitewater Contracting, LLC (7740) |
| 2. | Xinergy Corp. (3865) | 15. | Whitewater Resources, LLC  (9929) |
| 3. | Xinergy Finance (US), Inc. (5692) | 16. | Shenandoah Energy, LLC (6770) |
| 4. | Pinnacle Insurance Group LLC (6851) | 17. | High MAF, LLC (5418) |
| 5. | Xinergy of West Virginia, Inc. (2401) | 18. | Wise Loading Services, LLC (7154) |
| 6. | Xinergy Straight Creek, Inc. (0071) | 19. | Strata Fuels, LLC (1559) |
| 7. | Xinergy Sales, Inc. (8180) | 20. | True Energy, LLC (2894) |
| 8. | Xinergy Land, Inc. (8121) | 21. | Raven Crest Mining, LLC (0122) |
| 9. | Middle Fork Mining, Inc. (1593) | 22. | Brier Creek Coal Company, LLC (9999) |
| 10. | Big Run Mining, Inc. (1585) | 23. | Bull Creek Processing Company, LLC (0894) |
| 11. | Xinergy of Virginia, Inc. (8046) | 24. | Raven Crest Minerals, LLC (7746) |
| 12. | South Fork Coal Company, LLC  (3113) | 25. | Raven Crest Leasing, LLC (7844) |
| 13. | Sewell Mountain Coal Co., LLC (9737) | 26. | Raven Crest Contracting, LLC (7796) |